**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| MARGO CLARK, *individually and on behalf of all others similarly situated*, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Case No.: 1:22-CV-01591-JLA |
| | : | |
| v. | : | |
| | : | |
| BLUE DIAMOND GROWERS, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**BLUE DIAMOND GROWERS' MOTION TO DISMISS THE COMPLAINT**

**DLA PIPER LLP (US)**

Yan Grinblat
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
T: (312) 368-4000
E: yan.grinblat@us.dlapiper.com

Colleen Carey Gulliver*
Rachael C. Kessler*
Jason E. Kornmehl*
1251 Avenue of the Americas
New York, NY 10020-1104
T: (212) 335-4500
E: colleen.gulliver@us.dlapiper.com
E: rachael.kessler@us.dlapiper.com
E: jason.kornmehl@us.dlapiper.com

* Application forthcoming for admission *pro hac vice*

*Counsel for Defendant Blue Diamond Growers*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL BACKGROUND .........................................................................................2

    A.    The Smokehouse Almonds. ...............................................................2

    B.    Plaintiff ...............................................................................................3

STANDARD OF REVIEW .............................................................................................4

ARGUMENT ..................................................................................................................5

I.    PLAINTIFF HAS NOT SUFFERED AN INJURY CAUSED BY BDG AND DOES NOT HAVE STANDING. ...................................................5

    A.    Plaintiff Has Not Suffered an Injury. ..................................................5

    B.    Plaintiff Has Not Suffered An Injury-in-Fact. ...................................6

    C.    Any Purported Price Premium Was Not Fairly Traceable to the Smokehouse Statement. ....................................................................8

    D.    Plaintiff Does Not Have Standing to Seek Injunctive Relief. ..............9

II.    BDG DID NOT MAKE A MISSTATEMENT. ............................................10

III.    CLARK CANNOT ASSERT CLAIMS UNDER OTHER STATE'S CONSUMER PROTECTION STATUTES. ...................................................13

IV.    PLAINTIFF'S FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS FAIL. ......................................................14

    A.    Plaintiff Has Not Pled Fraudulent Intent. ..........................................15

    B.    Plaintiff Has Not Pled Reliance. .......................................................15

    C.    The Economic Loss Rule Bars the Negligent Misrepresentation Claim. ..............16

    D.    BDG Did Not Owe Plaintiff a Duty. ..................................................17

V.    THE BREACH OF EXPRESS WARRANTY AND BREACH OF IMPLIED WARRANTY CLAIMS FAIL. ...................................................18

    A.    Plaintiff Does Not Plead Privity. ......................................................18

    B.    Plaintiff Did Not Provide Pre-Suit Notice to BDG. .............................19

    C.    BDG Did Not Make Any Affirmation Regarding the Almonds. ............20

    D.    The Almonds Were Fit for Human Consumption. ...............................21

    E.    The Fitness for a Purpose Claim Fails for Several Additional Reasons. ...............21

VI.    THE MMWA CLAIM FAILS. ....................................................................23

VII.    THE UNJUST ENRICHMENT CLAIM FAILS. .........................................24

CONCLUSION .............................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace Hardware Corp. v. Landen Hardware, LLC*,
2011 WL 5979451 (N.D. Ill. Nov. 28, 2011) ............................................................5

*Anthony v. Country Life Mfg., LLC*,
70 F. App'x 379 (7th Cir. 2003) .........................................................................5, 6

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
572 F.3d 440 (7th Cir. 2009) ............................................................................4, 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................4

*Baldwin v. Star Sci., Inc.*,
78 F. Supp. 3d 724 (N.D. Ill. 2015) ......................................................................19

*Barreto v. Westbrae Natural, Inc.*,
518 F. Supp. 3d 795 ...............................................................................................15

*Bazer v. Brew Dr. Kombucha, LLC*,
2019 WL 13204390 (N.D. Ill. Jan. 15, 2019) ................................................13, 14

*BCBSM, Inc. v. Walgreen Co.*,
512 F. Supp. 3d 837 (N.D. Ill. 2021) ...................................................................17

*BIC Corp. v. Chi. Imp., Inc.*,
540 F. Supp. 3d 786 (N.D. Ill. 2021) ...................................................................19

*Brogan v. Mitchell Int'l, Inc.*,
181 Ill.2d 178 (1998) .............................................................................................17

*Bynum v. Fam. Dollar Stores, Inc.*,
2022 WL 837089 (S.D.N.Y. Mar. 21, 2022) ........................................................12

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ................................................................................10

*Campbell v. Whole Food Mkt. Grp., Inc.*,
516 F. Supp. 3d 370 (S.D.N.Y. 2021)......................................................15, 19, 20

*Cerretti v. Whole Foods Market Grp., Inc.*,
2022 WL 1062793 (N.D. Ill. Apr. 8, 2022) ..............................................16, 17, 24

*Chiappetta v. Kellogg Sales Co.*,
  2022 WL 602505 (N.D. Ill. Mar. 1, 2022)..........................................10, 11, 12, 15

*CHS Acquisition Corp. v. Watson Coatings, Inc.*,
  2018 WL 3970137 (N.D. Ill. Aug. 20, 2018) ....................................................22, 23

*Cleary v. Philip Morris Inc.*,
  656 F.3d 511 (7th Cir. 2011) ................................................................................24

*Corwin v. Conn. Valley Arms, Inc.*,
  74 F. Supp. 3d 883 (N.D. Ill. 2014) .....................................................................22

*Cowen v. Lenny & Larry's, Inc.*,
  2017 WL 4572201 (N.D. Ill. Oct. 12, 2017)........................................................14

*Cty. of Cook v. HSBC N. Am. Holdings Inc.*,
  136 F. Supp. 3d 952 (N.D. Ill. 2015) ......................................................................9

*Floyd v. Pepperidge Farm, Inc.*,
  581 F. Supp. 3d 1101 (S.D. Ill. 2022) ................................................................5, 11

*Flynn v. FCA US LLC*,
  39 F.4th 946 (7th Cir. 2022) ..............................................................................4, 7

*Great Atl. & Pac. Tea Co., Inc. v. FTC*,
  440 U.S. 69 (1979)..................................................................................................9

*Gubala v. CVS Pharm., Inc.*,
  2015 WL 3777627 (N.D. Ill. June 16, 2015) ........................................................20

*Hauger v. Dollar Gen. Corp.*,
  2022 WL 2532487 (C.D. Ill. July 7, 2022) ...............................................16, 17, 18

*Housey v. Procter & Gamble Co.*,
  2022 WL 874731 (S.D.N.Y. Mar. 24, 2022) ..........................................................8

*Ibarrola v. Kind, LLC*,
  83 F. Supp. 3d 751 (N.D. Ill. 2015) ............................................................ *passim*

*Indus. Hard Chrome Ltd. v. Hetran, Inc.*,
  64 F. Supp. 2d 741 (N.D. Ill. 1999) .....................................................................22

*Kinman v. Kroger Co.*,
  2022 WL 1720589 (N.D. Ill. May 27, 2022) ............................................... *passim*

*Kraft Foods Grp., Inc. v. SunOpta Ingredients, Inc.*,
  2016 WL 5341809 (N.D. Ill. Sept. 23, 2016) .......................................................10

*Larry Trover Produce, Inc. v. Nutrien Ag Solutions, Inc.*,
  2022 WL 594863 (S.D. Ill. Feb. 28, 2022) ...................................................................19

*Lend Lease (US) Constr., Inc. v. Tech. Ins. Co., Inc.*,
  2016 WL 147895 (N.D. Ill. Jan. 13, 2016) ...................................................................25

*Manley v. Hain Celestial Grp., Inc.*,
  417 F. Supp. 3d 1114 (N.D. Ill. 2019) ...................................................................18

*In re McDonald's French Fries Litig.*,
  503 F. Supp. 2d 953 (N.D. Ill. 2007) ...............................................................22, 23

*O'Connor v. Ford Motor Co.*,
  477 F. Supp. 3d 705 (N.D. Ill. 2020) ...................................................................20

*Pirelli Armstrong Tire Corp. v. Walgreen Co.*,
  2010 WL 624709 (N.D. Ill. Feb. 18, 2010) ...................................................................14

*Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*,
  548 F. Supp. 2d 619 (N.D. Ill. 2008) ...................................................................24

*Raines v. Raines*,
  2020 WL 433880 (N.D. Ill. Jan. 28, 2020) ...................................................................16

*Reinitz v. Kellogg Sales Co.*,
  2022 WL 1813891 (C.D. Ill. Jun. 2, 2022) ...............................................................17, 18

*Rudy v. Fam. Dollar Stores, Inc.*,
  2022 WL 345081 (N.D. Ill. Feb. 4, 2022) ................................................................ *passim*

*In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*,
  155 F. Supp. 3d 772 (N.D. Ill. 2016) ...................................................................22

*Sabrina Roppo v. Travelers Com. Ins. Co.*,
  869 F.3d 568 (7th Cir. 2017) ...................................................................16

*Schiesser v. Ford Motor Co.*,
  2016 WL 6395457 (N.D. Ill. Oct. 28, 2016) ...................................................................23

*In re Sears, Roebuck & Co.*,
  2006 WL 1443737 (N.D. Ill. May 17, 2006) ...................................................................24

*Solvay USA v. Cutting Edge Fabrication, Inc.*,
  521 F. Supp. 3d 718 (N.D. Ill. 2006) ...................................................................21

*Spector v. Mondelez Int'l, Inc.*,
  178 F. Supp. 3d 657 (N.D. Ill. 2016) ...............................................................6, 24

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .................................................................................... 6, 9

*Steele v. Wegmans Food Mkts., Inc.*,
472 F. Supp. 3d 47 (S.D.N.Y. 2020) ........................................................... 12

*Stemm v. Tootsie Roll Indus., Inc.*,
374 F. Supp. 3d 734 (N.D. Ill. 2019) .......................................................... 13

*Twohig v. ShopRite Supermkts., Inc.*,
519 F. Supp. 3d 154 (S.D.N.Y. 2021) .......................................................... 15

*U.S. v. Topco Assocs., Inc.*,
405 U.S. 596 (1972) ........................................................................................ 9

*Veath Fish Farm, LLC v. Purina Animal Nutrition, LLC*,
2017 WL 4472784 (S.D. Ill. Oct. 6, 2017) .................................................. 23

*Wiegel v. Stork Craft Mfg.*,
2010 WL 3894386 (N.D. Ill. June 10, 2010) ................................................. 5

*Zahora v. Orgain LLC*,
2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) ................................................. 13

**Statutes**

Alaska Stat. Ann. § 45.50.471 ...................................................................... 10

Alaska Stat. Ann. § 45.50.531 ........................................................................ 5

Ark. Code Ann. § 4-88-107 ........................................................................... 11

Ark. Code Ann. § 4-88-113 ............................................................................. 5

Food Drug and Cosmetic Act, 21 U.S.C. § 301 ........................................... 13

Idaho Code Ann. § 48-608 ........................................................................ 5, 11

Ill. Comp. Stat. Ann. 5/2-607(3)(a) .............................................................. 19

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 ........................ 1

Iowa Code Ann. § 714H.3 ............................................................................. 11

Iowa Code Ann. § 714H.5 ............................................................................... 5

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ....................... 1, 23

Mont. Code Ann. § 30-14-103 ...................................................................... 11

Mont. Code Ann. § 30-14-133 .................................................................................5

Neb. Rev. Stat. Ann. § 59-1602 .............................................................................11

Neb. Rev. Stat. Ann. § 59-1609 ...............................................................................5

S.D. Codified Laws § 37-24-6 ................................................................................11

S.D. Codified Laws § 37-24-31 ................................................................................5

Tex. Bus. & Com. Code Ann. § 17.46 ...................................................................11

Tex. Bus. & Com. Code Ann. § 17.50 .....................................................................5

Utah Code Ann. § 13-11a-3 ....................................................................................11

Utah Code Ann. § 13-11a-4 ......................................................................................5

W. Va. Code Ann. § 46A-6-104 .............................................................................11

W. Va. Code Ann. § 46A-6-106 ...............................................................................5

Wyo. Stat. Ann. § 40-12-105 .................................................................................11

Wyo. Stat. Ann. § 40-12-108 ...................................................................................5

**Other Authorities**

Fed. R. Civ. Proc. 12(b) ...........................................................................................4

## PRELIMINARY STATEMENT

Blue Diamond Growers ("BDG") manufactures and sells many varieties of almonds, one of which it brands "Smokehouse" to describe its smoky taste (the "Almonds"). The plaintiff, Margo Clark ("Plaintiff"), brings more than twenty claims[1] against BDG based on her subjective belief that the Almonds derived their smoky taste from being cooked over a fire containing various wood chips. She does this despite the fact that the label does not state that the Almonds are "smoked" and contains a picture of the Almonds coated in a visible seasoning.

Plaintiff further claims that she would not have bought or would have paid less for the Almonds if she had known that they were not actually smoked. Plaintiff, however, has not been injured because she received exactly what she bargained for: the Almonds at the price she agreed to pay. She also did not pay more for the Almonds because of the purported misrepresentation because BDG (and CVS where she purchased the Almonds) charge *the same amount for the Smokehouse Almonds as they do for unflavored almonds*.

The Court should dismiss the Complaint with prejudice for numerous independent reasons, including:

- Plaintiff's allegation that she would not have purchased the Almonds if she knew they were not smoked is insufficient to allege an injury as she received what she bargained for (*see* Section I.A);

- Plaintiff does not have Article III standing to assert any of her claims because she has not suffered an injury-in-fact as she did not pay a price premium (*see* Section I.B);

- Any purported price premium paid by Plaintiff was not fairly traceable to the Smokehouse statement (*see* Section I.C.);

---

[1] Plaintiff asserts claims for: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA"); (2) violation of the consumer fraud acts of the twelve additional states (the "Multi-State Consumer Fraud Claims"); (3) breach of express warranty; (4) breach of implied warranty of merchantability; (5) breach of implied warranty of fitness for a particular purpose; (6) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA"); (7) negligent misrepresentation; (8) fraud; and (9) unjust enrichment.

- Plaintiff's request for injunctive relief must be denied because she does not allege future harm (*see* Section I.D);

- Plaintiff's complaint fails because BDG did not make a misstatement (*see* Section II);

- Plaintiff cannot assert the Multi-State Consumer Fraud Claims (*see* Section III);

- The fraud claim fails because Plaintiff does not plead fraudulent intent (*see* Section IV.A);

- The fraud and negligent misrepresentation claims fail because Plaintiff does not plead reliance (*see* Section IV.B);

- The negligent misrepresentation claim fails because it is barred by the economic loss doctrine (*see* Section IV.C) and BDG did not owe Plaintiff a duty (*see* Section IV.D);

- The breach of express and implied warranty claims fail because Plaintiff fails to plead privity with BDG (*see* Section V.A) and did not provide pre-suit notice (*see* Section V.B);

- The breach of express warranty claim also fails because BDG did not promise that the Almonds derive their smoky flavor from being cooked over a fire (*see* Section V.C);

- The breach of implied warranty claim also fails because the Almonds were fit for human consumption (*see* Section V.D);

- The breach of the implied warranty of fitness for a particular purpose claim fails because Plaintiff does not plausibly allege: (1) that she purchased the Product for a particular purpose; (2) that BDG knew what this purpose was before her purchase; and (3) that she relied on the BDG's judgment to select the goods (*see* Section V.E);

- The MMWA claim fails because: (1) Plaintiff fails to allege an underlying state law warranty claim; and (2) BDG did not issue a written warranty (*see* Sections VI); and

- The unjust enrichment claim fails because it is merely duplicative of her other causes of action and she does not allege an improperly retained benefit by BDG (*see* Section VII).

## **FACTUAL BACKGROUND**

### A.      **The Smokehouse Almonds.**

BDG is a California almond grower cooperative that manufactures and sells many varieties of almonds (the "Snack Almond Products"). (Compl. ¶¶ 1, 79-82.) One such variety is the Almonds, which BDG brands "Smokehouse" to describe their smoky taste. (*Id.* ¶ 1, 29.) The

Almonds's label does not say that they are smoked nor does the word "smoked" appear anywhere on the label. (*Id.* ¶ 1.) BDG imparts the smoky flavor of the Almonds through a visible seasoning that coats the Almonds (and is pictured on the front of pack label), which contains, among other ingredients, natural hickory smoke flavor. (*See id.* ¶ 1, 41.) The ingredient panel confirms that the Almonds derive their smoky taste from "natural hickory smoke flavor" and other "natural flavors." (*Id.* ¶ 41.)

"BDG employs line pricing for its Snack Almond Products" for both retail and wholesale. (Declaration of Christian Albitz ("Albitz Decl.") ¶ 7.) This means that "each flavor . . . is priced identically." (*Id.* ¶ 8.) "For instance, a six ounce can of Smokehouse Almonds costs the same as a six ounce can of ***unflavored*** Whole Natural almonds." (*Id.* (emphasis added).) "The vast majority of BDG's sales are made through third-party retailers" and "BDG does not set the retail price of Snack Almond Products sold through" them. (*Id.* ¶¶ 10-11.) "Each retailer . . . sets its own." (*Id.* ¶ 11.) "Many retailers, including CVS, where the plaintiff claims to have purchased the Almonds," "apply line pricing" "for . . . Smokehouse Almonds." (*Id.* ¶ 12.)

**B.    Plaintiff**

Plaintiff claims that she purchased the Almonds on an unspecified number of occasions, but at least at a CVS store in Chicago "between March 15, 2022, and March 21, 2022." (Compl. ¶ 88.) She does not allege, however, which pack size she purchased or how much she paid on any occasion. (*Id.*) Instead, she asserts that she bought them "at or exceeding" the price of "$7.98 per 16 OZ." (*Id.* ¶¶ 68, 91.) Plaintiff claims that she purchased the Almonds based upon a belief that they were "made in a smokehouse" but only vaguely asserts that this understanding was due to the "words, terms[,] coloring, descriptions, layout, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at

its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store digital, audio, and print marketing." (*Id.* ¶ 90.)

## STANDARD OF REVIEW

BDG brings this motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In deciding Rule 12(b)(6) motions, courts apply a "plausibility standard," which is guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, although the Court must accept a complaint's well-pled allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, only complaints that state a "plausible claim for relief" may survive a motion to dismiss. *Id.* at 679.

Separately, under Rule 12(b)(1), a defendant may make a "factual challenge" to standing when "the contention is that there is *in fact* no subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co*., 572 F.3d 440, 444 (7th Cir. 2009). "[W]hen considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (quotation marks omitted). "[T]he trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* In addition, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* "In response to a factual challenge, the plaintiff can no longer rest on the allegations in the complaint but must adduce specific evidence to satisfy each of the elements necessary to establish his standing to sue." *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022).

## ARGUMENT

## I. PLAINTIFF HAS NOT SUFFERED AN INJURY CAUSED BY BDG AND DOES NOT HAVE STANDING.

At the outset, Plaintiff's Complaint must be dismissed because she has not suffered an injury. Plaintiff posits that she was injured because she "would not have purchased the [Almonds]" or "would have paid less for" them had she known the source of their flavoring. (*See, e.g.*, Compl. ¶ 92.) But these allegations fail because: (a) the fact that Plaintiff purportedly "would not have purchased" the Almonds is not a compensable injury; (b) Plaintiff does not have an Article III injury-in-fact under an overpayment theory because she did not pay a price premium; (c) any price premium was not fairly traceable to BDG's Smokehouse statement; and (d) Plaintiff does not have standing to seek injunctive relief.

### A. Plaintiff Has Not Suffered an Injury.

Plaintiff does not have a cognizable injury when she alleges that she "would not have purchased the [Almonds] if she knew" the truth. (Compl. ¶ 92); *see Anthony v. Country Life Mfg., LLC*, 70 F. App'x 379, 383 (7th Cir. 2003) (affirming dismissal of ICFA claim). "[T]o state a claim under the [ICFA] [a plaintiff] must . . . allege that the 'unfair practice' proximately caused an injury." *Id.*[2]

In *Country Life*, the plaintiff alleged that the defendant's nutrition bars were misleading

---

[2] Plaintiff's additional claims, other than unjust enrichment, also require her to sufficiently allege that she suffered an injury or ascertainable loss, which she has failed to do for the reasons set forth herein. *See, e.g.*, *Floyd v. Pepperidge Farm, Inc.*, 581 F. Supp. 3d 1101, 1109 (S.D. Ill. 2022) (express warranty, implied warranty of merchantability, Magnuson Moss Warranty Act); *Ace Hardware Corp. v. Landen Hardware, LLC*, 2011 WL 5979451, at *2 (N.D. Ill. Nov. 28, 2011) (negligent misrepresentation); *Kinman v. Kroger Co.*, 2022 WL 1720589, at *7-8 (N.D. Ill. May 27, 2022) (Alonso, J.) (fraud); *Wiegel v. Stork Craft Mfg.*, 2010 WL 3894386, at *1 (N.D. Ill. June 10, 2010) (implied warranty for a particular purpose); Alaska Stat. Ann. § 45.50.531; Ark. Code Ann. § 4-88-113; Idaho Code Ann. § 48-608; Iowa Code Ann. § 714H.5; Mont. Code Ann. § 30-14-133; Neb. Rev. Stat. Ann. § 59-1609; S.D. Codified Laws § 37-24-31; Tex. Bus. & Com. Code Ann. § 17.50; Utah Code Ann. § 13-11a-4; W. Va. Code Ann. § 46A-6-106; Wyo. Stat. Ann. § 40-12-108.

because they contained improper additives and that she was injured in the amount of "the cost of the nutritional bars which she would not have purchased" had she known. *Id.* at 383. The Seventh Circuit affirmed dismissal because "[the plaintiff] consumed the products, she received exactly what she paid for and therefore did not suffer an economic injury." *Id.*; *see also Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 673 (N.D. Ill. 2016) (finding allegation that plaintiff "would not have purchased" the product insufficient). Similarly, in *Flores v. United Airlines*, this Court held that a plaintiff asserting an ICFA claim for travel insurance she claimed she would not have purchased had not "alleged an injury" because "Plaintiff ha[d] alleged she purchased travel insurance, and she allege[d] she received the travel insurance. So long as she received the benefit of the bargain, she was not injured." 426 F. Supp. 3d 520, 532 (N.D. Ill. 2019).

So too here. Plaintiff's allegation that she "would not have purchased the Product" is insufficient. (Compl. ¶ 110.) She agreed to purchase the Almonds for the amount offered. Plaintiff "received exactly what she paid for." *Country Life*, 70 F. App'x at 383.

### B. Plaintiff Has Not Suffered an Injury-in-Fact.

As to Plaintiff's remaining allegation of injury—that she would not have paid as much— this too fails because she has not suffered an injury-in-fact to confer Article III standing. Plaintiff did not pay a price premium: the Almonds are priced ***identically*** to all of BDG's other flavors of almonds, including its ***unflavored*** almonds. "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting

*Lujan*, 504 U.S. at 560).

In *Flynn*, for instance, the Seventh Circuit affirmed the district court's dismissal of the plaintiffs' consumer fraud claims after the defendant made a factual challenge to standing. 39 F.4th at 949-50. The plaintiffs had alleged that they "suffered an 'overpayment' injury" because they "paid more for their vehicles than they would have if they had known" that the vehicles had a "cybersecurity vulnerability." *Id.* at 949. The Seventh Circuit affirmed because "the plaintiffs failed to meet their burden" of establishing standing after they did not "cit[e] specific evidence" or "develop[] a factual argument ***demonstrating*** that they suffered an overpayment injury," and instead "relied on mere allegations from their complaint." *Id.* at 952 (emphasis added); *see also Apex Digital*, 572 F.3d at 444-45 (affirming dismissal based on factual challenge to standing because the plaintiff "failed to produce *any* evidence to rebut" the defendant's challenge).

Finally, in *Fus v. CaféPress, Inc.*, the plaintiff filed a data breach class action, which the defendant moved to dismiss. 2020 WL 7027653, at *2 (N.D. Ill. Nov. 30, 2020). The defendant made a factual challenge to standing and argued that the plaintiff did "not have standing … because the data breach did not cause him an injury-in-fact [as] none of [the plaintiff's] non-public personal or financial information could have been exposed." *Id.* at *3. In response, the plaintiff sought to strike the declarations submitted in support as improper merits argument. *Id.* *4. The Court held that the declarations were proper support for a factual challenge and since the defendant had called the plaintiff's "standing into question," the plaintiff "ha[d] the burden of coming forward with evidence establishing his standing." *Id.* Because he "fail[ed] to come forward with his own evidence" the plaintiff "lack[ed] standing." *Id.*

The same result is compelled here. Although Plaintiff repeatedly asserts that the Almonds are "sold at a premium price," the truth is that she did not pay a price premium. (*See* Compl. ¶ 68;

*see also* ¶ 94 ("would not have paid as much"); ¶ 110 (same).) BDG charges retailers ***the same amount*** for the Almonds as they do for ***unflavored*** Whole Natural Almonds. (Albitz Decl. ¶ 8, 15 (emphasis added).) And CVS, who Plaintiff claims to have purchased the Almonds from, does the same. (*Id.* ¶ 12.) In such a situation, "there is no price premium" because "each of the variations or 'flavors'" of the product at issue "were sold at the same price." *Housey v. Procter & Gamble Co.*, 2022 WL 874731, at *8 (S.D.N.Y. Mar. 24, 2022) (dismissing complaint).

Although Plaintiff argues that the Planters Smoked Almonds are a "competitor" product that "truthfully disclose[s]" the fact that it is not smoked "on the front label" (Compl. ¶ 50), throughout the purported class period the Almonds retailed for an average of 22% ***less than*** the Planters Smoked Almonds. (*See* Albitz Decl. ¶ 18.) Thus, Plaintiff's own comparison further disproves the existence of a price premium.

In addition, Plaintiff also points to the Nuts Aboutcha Hickory Smoked Almonds ("Nuts Aboutcha Almonds") as "[a]lmonds that are smoked in a smokehouse," (Compl. ¶ 48), but these almonds cost ***more than double the retail price*** for the Almonds. (*See* Erwin Decl. ¶ 8; *see also* Compl. ¶ 68.) This is not surprising because nuts that are actually smoked routinely cost significantly more than nuts that are not, like the Almonds. (Erwin Decl. ¶ 7.) This comparison further undercuts Plaintiff's allegation of a price premium and that "[a]lmonds prepared in a smokehouse are not a . . . pric[e]y delicacy." (Compl. ¶ 43.)[3] Thus, Plaintiff did not suffer an injury-in-fact sufficient to confer standing.

### C. Any Purported Price Premium Was Not Fairly Traceable to the Smokehouse Statement.

Plaintiff also lacks standing because any purported price premium is not fairly traceable to

---

[3] The Complaint also identifies Walmart's Great Value Natural Smoke Flavor Almonds ("Great Value") as a competitor product (Compl. ¶ 50), which is addressed in Section I(C), *infra*.

BDG's alleged conduct. Article III requires a plaintiff to establish that any injury is "fairly traceable to the challenged conduct of the defendant." *Spokeo, Inc.*, 578 U.S. at 338. "[T]here must be a causal connection between the injury and the conduct." *Cty. of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 959-60 (N.D. Ill. 2015) (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)).

Here, any purported price premium is not traceable to the Smokehouse statement. Although Plaintiff alleges that the Great Value Almonds are a competitor product, which purportedly costs less because it is labeled as having its smoky flavor from flavoring (*see* Compl. ¶ 50), any price differential between the Great Value Almonds and the Almonds is due to the Great Value Almonds' status as a private-label product owned by Walmart, as opposed to a brand-name product like BDG. (*See* Erwin Decl. ¶ 9; *see also* Albitz Decl. ¶ 19.) As the Supreme Court has observed, "[i]t is obvious that by using private-label products, a chain can achieve significant cost economies in purchasing, transportation, warehousing, promotion, and advertising. These economies may afford the chain opportunities for offering private-label products at ***lower prices*** than other brand-name products." *U.S. v. Topco Assocs., Inc.*, 405 U.S. 596, 599 n.3 (1972) (emphasis added); *see also Great Atl. & Pac. Tea Co., Inc. v. FTC*, 440 U.S. 69, 72 (1979) ("This agreement resulted from an effort by A&P to achieve cost savings by switching from the sale of 'brand label' milk (milk sold under the brand name of the supplying dairy) to the sale of 'private label' milk (milk sold under the A&P label)."). Thus, any purported price differential between the Almonds and the Great Value Almonds is due to Great Value's status as a private-label product and is not fairly traceable to the "Smokehouse" statement.

### D.     Plaintiff Does Not Have Standing to Seek Injunctive Relief.

Plaintiff also does not have standing to seek injunctive relief because she has no risk of future harm. "'[P]ast exposure to illegal conduct does not in itself show a present case or

controversy regarding injunctive relief." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740-41 (7th Cir. 2014). Instead, a plaintiff must "sufficiently allege that [a defendant's] conduct will likely cause him harm in the future." *Id.* at 740. Where a plaintiff is "aware of [the defendant's] sales practices, he is not likely to be harmed by the practices in the future." *Id.* at 741; *see also Chiappetta v. Kellogg Sales Co*., 2022 WL 602505, at *10 (N.D. Ill. Mar. 1, 2022) (denying injunctive relief where plaintiff "knows that the Product's filling contains apples and pears. . . ; therefore, she is unlikely to be harmed . . . in the future.").

In *Kinman*, this Court dismissed the requested injunctive relief (which was sought by the same counsel as Plaintiff's), finding her allegation that "she would purchase the product again in the future 'when she can do so with the assurance that Product's representations are consistent with its composition'" to be "speculative" and "[n]ow that the plaintiff is aware of the alleged omission, she . . . is unlikely to purchase the cheese again." 2022 WL 1720589, at *8.

Plaintiff makes the same faulty allegation here: "Plaintiff intends to, seeks to, and will purchase the [Almonds] again when she can do so with the assurance the [Almonds'] representations are consistent with its abilities, attributes, and/or composition." (*See* Compl. ¶ 95.) But, just as in *Kinman*, Plaintiff is now aware that the Almonds are not smoked and is unlikely to make another purchase. Accordingly, she does not have standing to seek injunctive relief.

## II.     BDG DID NOT MAKE A MISSTATEMENT.

BDG's use of the "Smokehouse" brand name as a flavor indicator is not materially misleading. Plaintiff must demonstrate "a deceptive act or practice" by BDG to assert her ICFA, fraud and negligent misrepresentation claims. *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (ICFA);[4] *Kraft Foods Grp., Inc. v. SunOpta Ingredients, Inc.*, 2016 WL 5341809,

---

[4] A deceptive act is also a necessary element of her consumer protection claims under the laws of Alaska, Arkansas, Idaho, Iowa, Montana, Nebraska, South Dakota, Texas, Utah and Wyoming. *See* Alaska Stat.

at *2 (N.D. Ill. Sept. 23, 2016) (Alonso, J.) (fraud); *Floyd*, 581 F. Supp. 3d at 1111-12 (negligent misrepresentation). "A practice is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Chiappetta*, 2022 WL 602505, at *3 (quotation marks omitted).

"To determine the likelihood of deception, courts apply a reasonable consumer standard," which "requires more than a mere possibility that a label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner" and instead "requires a probability that a significant portion of the general consuming public acting reasonably in the circumstances, could be misled." *Id.* (quotation marks omitted). "Allegedly deceptive labels," moreover, "must be viewed in context, and even where a statement might be deceptive in isolation, it may be permissible in conjunction with clarifying language." *Floyd*, 581 F. Supp. 3d at 1009. "The Seventh Circuit has held that a statement or label cannot mislead unless it actually conveys untrue information about a product." *Id.* (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)). "[A] court may dismiss the complaint if the challenged statement was not misleading as a matter of law." *Ibarrola*, 83 F. Supp. 3d at 756.

For example, in *Chiappetta* the plaintiff argued that the word "strawberry" and a picture of "red filling" on the front of the product's label deceived her into believing that there were more strawberries than there actually were. 2022 WL 602505, at *4. The defendant argued that the product label was not deceptive because it was not making an ingredient claim and because "courts have made clear that a product's color does not convey to a reasonable consumer that the product contains certain ingredients." *Id.* The Court agreed with the defendant, holding that "no

---

Ann. § 45.50.471; Ark. Code Ann. § 4-88-107; Idaho Code Ann. § 48-608; Iowa Code Ann. § 714H.3; Mont. Code Ann. § 30-14-103; Neb. Rev. Stat. Ann. § 59-1602; S.D. Codified Laws § 37-24-6; Tex. Bus. & Com. Code Ann. § 17.46; Utah Code Ann. § 13-11a-3; W. Va. Code Ann. § 46A-6-104; Wyo. Stat. Ann. § 40-12-105.

reasonable consumer would conclude that [a product's] filling contains a certain amount of strawberries based on the package's images and its use of the term 'Strawberry.'" *Id.*; *see also Ibarrola*, 83 F. Supp. 3d at 756-57 (holding "no refined sugar" statement not misleading because "no reasonable consumer would think . . . that the sugar contained in [the product at issue] was still in its natural, completely unrefined state.").

Here, no reasonable consumer seeing a red package labeled "Smokehouse" would conclude that the Almonds derive their smoky taste from having been smoked over a hardwood fire in an outbuilding constructed for that specific purpose.[5] Rather, the reasonable consumer would simply conclude that the package contains exactly what one receives—almonds with a smoky taste. *See, e.g.*, *Steele v. Wegmans Food Mkts., Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (dismissing claim; "What is misrepresented? The ice cream is vanilla flavored.").[6]

In any event, the full context of the Almonds' front of pack label makes clear that their smoky flavor comes from seasoning—not smoking. In close proximity to the Smokehouse statement is an image that clearly shows that the Almonds are coated in a visible seasoning. (*See* Compl. ¶ 1.)[7] The ingredient panel further confirms that the seasoning contains "natural hickory

---

[5] Plaintiff vaguely alleges that she "relied on the words, terms[,] coloring, descriptions, layout, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its direction, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing." (Compl. ¶ 90.) She does not, however, identify anything other than the "Smokehouse" statement and red coloring. (*See* Compl. ¶¶ 1-2, 12-20, 29.)

[6] Certain courts within this district have found that the phrases "Smoked Almonds" and "Smoked Gouda" may be interpreted by a reasonable consumer that the products were actually smoked. *See Rudy v. Fam. Dollar Stores, Inc.*, 2022 WL 345081, at *4 (N.D. Ill. Feb. 4, 2022); *see also Kinman*, 2022 WL 1720589, at *6-7. These statements, however, are distinguishable from the "Smokehouse" statement because "Smoked" literally states that the products were subject to a smoking process. In any event, courts have reached different conclusions regarding whether "Smoked Almonds" is misleading to a reasonable consumer. *See, e.g.*, *Bynum v. Fam. Dollar Stores, Inc.*, 2022 WL 837089, at *4 (S.D.N.Y. Mar. 21, 2022).

[7] In *Colpitts v. Blue Diamond Growers*, the Court declined to conclude as a matter of law that the statement "Smokehouse" is not misleading to a reasonable consumer. 527 F. Supp. 3d 562, 580-84 (S.D.N.Y. 2021).

smoke flavor." (*Id.* ¶ 41.)

Finally, to the extent that Plaintiff is attempting to argue that BDG made a misstatement by relying on FDA labeling regulations, that attempt fails. "FDA product labeling regulations are not relevant in determining whether [plaintiff] has stated a claim under the ICFA." *Zahora v. Orgain LLC*, 2021 WL 5140504, at *4 (N.D. Ill. Nov. 4, 2021) (dismissing claims). A purported violation of the Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*, moreover, does not constitute a violation of the ICFA. *See, e.g.*, *id.* ("enforcement of FDA regulations . . . lies solely within the purview of the FDA"); *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 742 (N.D. Ill. 2019) (a violation of a FDCA regulation is not a ICFA violation *per se*).

In sum, because no reasonable consumer would be misled by the Almonds' packaging, Plaintiff's Complaint fails in its entirety.

## III. CLARK CANNOT ASSERT CLAIMS UNDER OTHER STATE'S CONSUMER PROTECTION STATUTES.

In addition to failing to state a claim under the ICFA, Plaintiff also cannot assert her Multi-State Consumer Fraud Claim, which seeks to assert claims under Arkansas, Iowa, Wyoming, Texas, Nebraska, South Dakota, West Virginia, Utah, Idaho, Alaska, and Montana consumer protection statutes. (Compl. ¶ 97.) As this Court has explained, a named plaintiff cannot "pursue claims based on statutory causes of action created by states where [she] neither lived nor was injured.'" *Bazer v. Brew Dr. Kombucha, LLC*, 2019 WL 13204390, at *5 (N.D. Ill. Jan. 15, 2019) (Alonso, J.) (quoting *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1001 (N.D. Ill. 2017)). Yet, that is exactly what Plaintiff attempts to do by bringing violations for ***twelve consumer protection statutes***. (*See* Compl. ¶¶ 97; 111-115.)

---

To reach its holding, however, the Court did not consider the image in close proximity to the Smokehouse statement on the front of the package that clearly shows the Almonds are coated in a visible seasoning.

In *Bazer*, this Court dismissed the consumer protection claims for states other than Illinois because of "substantial doubt" that the named plaintiff could "assert causes of action created by other states for the benefit of other individuals injured in those other states." 2019 WL 13204390, at *5; *see also Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201, at *4-5 (N.D. Ill. Oct. 12, 2017) (striking claims pled on behalf of a multi-state class). The same approach was taken in *Caraluzzi v. Prudential Securities, Inc.*, where the named plaintiffs attempted to assert claims for the consumer protection laws of "several states." 824 F. Supp. 1206, 1213 (N.D. Ill. 1993). The Court determined that "[o]nly the Connecticut consumer fraud statute applied to the" plaintiffs, and since they had not pled the requirements of that claim, dismissed the complaint. *See id.* n.6; *see also Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 2010 WL 624709, at *5, 7 (N.D. Ill. Feb. 18, 2010) (the plaintiff "assert[ed] that Walgreens violated thirty-five state consumer protection statutes" but the Court analyzed only the ICFA, found it lacking, and dismissed the claim).

Like *Bazer* and *Caraluzzi*, Plaintiff is the only named plaintiff in this case, and her alleged injury took place in Illinois, where she resides and where she purchased the Almonds. (*See* Compl. ¶¶ 71, 78, 88.) For these reasons, the Multi-State Consumer Fraud Claim must be dismissed.

## IV. PLAINTIFF'S FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS FAIL.

As discussed above, Plaintiff's common law fraud and negligent misrepresentation claims fail because there was no misrepresentation, and she has not adequately alleged any cognizable injury. Plaintiff's fraud claim also fails as a matter of law because she did not plead fraudulent intent. Both her fraud and negligent misrepresentation claims fail to sufficiently allege reliance. Her negligent misrepresentation claim, moreover, is barred by the economic loss rule and because she has not alleged a duty to disclose.

### A.      Plaintiff Has Not Pled Fraudulent Intent.

Plaintiff's fraud claim fails because she has not pled fraudulent intent.  In order to state a claim for fraud, Plaintiff must allege that BDG had "knowledge that [an alleged misrepresentation] was false" and that it was BDG's "intent that [the alleged misrepresentation] induce the plaintiff to act." *Kinman*, 2022 WL 1720589, at *7.  "*Scienter* . . . is an essential element of common-law fraud." *Rudy*, 2022 WL 345081, at *9 (quotation marks omitted).  "[I]ntent and knowledge may be alleged generally," but "[t]hey may not . . . be alleged conclusorily." *Kinman*, 2022 WL 1720589, at *7 (quotation marks omitted).

In *Kinman*, for example, this Court dismissed the plaintiff's fraud claim "alleg[ing] defendant's 'fraudulent intent [wa]s evinced by its knowledge that the Product was not consistent with its representations," because it was "conclusory." *Id.*  In *Rudy*, likewise, the Court dismissed based on an identical scienter allegation as "conclusory."  2022 WL 345081, at *9; *see also Chiappetta*, 2022 WL 602505, at *8 (dismissing fraud claim).[8]

Here, too, Plaintiff has only alleged fraudulent intent in a conclusory fashion.  Like the plaintiffs in *Kinman* and *Rudy*, she alleges that "Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations."  (Compl. ¶ 142.) Accordingly, the Court should dismiss Plaintiff's fraud claim.

### B.      Plaintiff Has Not Pled Reliance.

Plaintiff's common law fraud and negligent misrepresentation claims do not sufficiently

---

[8] Courts outside this Circuit also have dismissed fraud claims supported by similar allegations for failure to allege fraudulent intent. *See, e.g.*, *Colpitts*, 527 F. Supp. 3d at 585 (dismissing fraud claim; allegations that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were not true nor accurate" were "conclusory" and "f[e]ll short of the Rule 9(b) standard") (internal quotation marks omitted); *Twohig v. ShopRite Supermkts., Inc.*, 519 F. Supp. 3d 154, 166 (S.D.N.Y. 2021) (rejecting scienter allegation based on knowledge of falsity); *Campbell v. Whole Food Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 391 (S.D.N.Y. 2021) (same); *Barreto v. Westbrae Natural, Inc.*, 518 F. Supp. 3d 795, 808 (same).

allege reliance. Under Illinois law, "reliance is an element of both fraudulent and negligent misrepresentation." *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 591 (7th Cir. 2017). And, "[b]are allegations of reliance and harm—without any alleged facts describing how reliance and harm occurred—are insufficient." *Raines v. Raines*, 2020 WL 433880, at *3 (N.D. Ill. Jan. 28, 2020). In *Raines*, for instance, the Court dismissed the plaintiff's fraud claim where the plaintiff "d[id] not allege any facts indicating that Plaintiff relied on [the alleged] misrepresentations" and "simply ma[de] bare allegations that Plaintiff relied on Defendants' fraudulent misrepresentations." *Id.*

Here, Plaintiff merely alleges that she "relied on the words, terms[,] coloring, descriptions, layout, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately through in-store, digital, audio, and print marketing." (Compl. ¶ 90.) She does not identify *which* specific aspects of the Almonds' label she allegedly relied on, nor does she *identify* any "digital, audio, [or] print marketing" or other "digital, print and/or social media" she allegedly relied on. This bare assertion is insufficient to adequately allege reliance.

### C. The Economic Loss Rule Bars the Negligent Misrepresentation Claim.

Plaintiff's negligent misrepresentation claim also fails because it is barred by the economic loss rule. A plaintiff cannot seek "recovery in tort of a purely economic loss." *Hauger v. Dollar Gen. Corp.*, 2022 WL 2532487, at *5 (C.D. Ill. July 7, 2022). "Economic loss includes 'the diminution in value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.'" *Cerretti v. Whole Foods Market Grp., Inc.*, 2022 WL 1062793, at *6 (N.D. Ill. Apr. 8, 2022) (quoting *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 82 (1982)).

16

Courts routinely hold that a consumer seeking to recover "higher prices she paid because of [a defendant's] representations" seeks purely economic losses and cannot assert a negligent misrepresentation claim. *Id.* (dismissing claim); *Reinitz v. Kellogg Sales Co.*, 2022 WL 1813891, at *6 (C.D. Ill. Jun. 2, 2022) (same); *Hauger*, 2022 WL 2532487, at *5 (same).

The same result is compelled here. Plaintiff seeks purely economic damages, the difference in the price she paid for the product and the amount she purportedly would have paid "if the true facts had been known." (Compl. ¶ 138.) Thus, her negligent misrepresentation claim is barred by the economic loss rule.

### D. BDG Did Not Owe Plaintiff a Duty.

The negligent misrepresentation claim also fails because BDG did not owe Plaintiff a duty. A plaintiff must allege that "the defendant had a duty to the plaintiff to communicate accurate information." *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 850 (N.D. Ill. 2021) (dismissing claim). "[T]he Illinois Supreme Court *only* recognizes a duty to communicate accurate information where necessary 'to avoid negligently conveying false information that results in physical injury to a person or harm to property,' or 'to avoid negligently conveying false information where one is in the business of supplying information for the guidance of others in their business transactions.'" *Id.* at 854 (citation omitted); *see also Brogan v. Mitchell Int'l, Inc.*, 181 Ill.2d 178 (1998). Neither applies here.

First, Plaintiff does not allege that she suffered any "physical injury to a person or harm to property." *BCSM*, 512 F. Supp. 3d at 850. Her purported injuries are entirely economic in nature. (*See* Section IV.C, *supra.*)

Second, BDG is not "in the business of supplying information for the guidance of others in their business transactions." *BCSM*, 512 F. Supp. 3d at 854. Courts have repeatedly rejected the argument that manufacturers by providing product labels are guiding others in their business

17

transactions. "An allegation that a supplier of tangible goods provided information ancillary to the sale of a product [does] not suffice." *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1120 (N.D. Ill. 2019) (Alonso, J.) (dismissing claim concerning sunscreen label); *see also Rudy*, 2022 WL 345081, at *8 (dismissing claim concerning almonds' product label; food manufacturers are not "in the business of providing information"); *Reinitz*, 2022 WL 1813891, at *6 (dismissing claim; "professionals such as accountants and attorneys" are in the business of supplying information not a "producer of breakfast products"); *Hauger*, 2022 WL 2532487 (dismissing claim concerning a graham crackers box label).

The same result is compelled here. Plaintiff alleges that BDG owed her a duty because BDG holds "itself out as having special knowledge and experience in this area." (Compl. ¶ 133.) This is plainly insufficient. *See Rudy*, 2022 WL 345081, at *8 (rejecting claim of duty against food manufacturer "based on its position, holding itself out as having special knowledge and experience in this area") (internal quotation marks and citation omitted).

Accordingly, Plaintiff's claim for negligent misrepresentation must be dismissed.

## V. THE BREACH OF EXPRESS WARRANTY AND BREACH OF IMPLIED WARRANTY CLAIMS FAIL.

In addition to failing to plead injury (*see* Section I, *supra*), Plaintiff's express and implied warranty claims also fail because (i) she did not allege privity or (ii) provide pre-suit notice. Moreover, Plaintiff's express warranty claim fails because (iii) BDG did not make an affirmation that the Almonds were smoked. Finally, the implied warranty claims fail because (iv) the Almonds were merchantable and (v) Plaintiff does not allege any of the required elements for her fitness for a particular purpose claim.

### A. Plaintiff Does Not Plead Privity.

All of Plaintiff's breach of warranty claims fail for lack of privity. "[U]nder Illinois law,

[a plaintiff] must prove privity of contract before [they] can recover economic damages for breaches of express and implied warranty claims." *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 740 (N.D. Ill. 2015); *Larry Trover Produce, Inc. v. Nutrien Ag Solutions, Inc.*, 2022 WL 594863, at *5-6 (S.D. Ill. Feb. 28, 2022) (privity required for breach of implied warranty of fitness for a particular purpose claim). "Privity means that a plaintiff can only recover against his immediate seller." *Baldwin*, 78 F. Supp. 3d at 740 (quotation marks omitted). Here, Plaintiff concedes that she purchased the Almonds from "third-parties," including CVS, and not directly from BDG. (*See* Compl. ¶¶ 76, 87-88.)

## B. Plaintiff Did Not Provide Pre-Suit Notice to BDG.

Plaintiff's breach of express and implied warranty claims also must be dismissed because she failed to provide BDG with the requisite pre-suit notice. A plaintiff must provide a defendant with notice of a breach of warranty "within a reasonable time after he discovers or should have discovered any breach." 810 Ill. Comp. Stat. Ann. 5/2-607(3)(a). "This notice provision serves to encourage presuit settlement negotiations and applies to all the various beneficiaries of an implied or express warranty in addition to the purchaser of the goods." *BIC Corp. v. Chi. Imp., Inc.*, 540 F. Supp. 3d 786, 795 (N.D. Ill. 2021)). Plaintiff attempts to allege the requisite notice through: (1) stating she "provided or will provide notice to Defendant" (Compl. ¶ 125); (2) by filing the Complaint (*id.* ¶ 126); and (3) because BDG purportedly "received . . . complaints by third-parties." (*id.* ¶ 127.) Each of these allegations fails to fulfill the pre-suit notice requirement.

First, Plaintiff's vague allegation that she "provided or will provide" notice fails as a matter of law. In *Campbell*, the Court considered a similar allegation and found that it was "insufficient to show that the buyer provided timely notice of the alleged breach – the statement is wholly equivocal" and "[i]f Plaintiff had provided notice, she could have written that, rather than pleading, in essence, both that she did provide notice, and that she did not do so but will do so in the future."

516 F. Supp. 3d at 391; *see also Rudy*, 2022 WL 345081, at *7 ("Because [plaintiff] did not notify [defendant] of the alleged breach before filing this lawsuit . . . her claims for breach of express and implied warranties are dismissed.").

Second, Plaintiff did not satisfy the notice requirement simply by filing suit. In dismissing warranty claims, courts have rejected similar allegations and explained that the purpose of pre-suit notice "would be eviscerated if a party could satisfy the notice requirement by filing suit." *Rudy*, 2022 WL 345081, at *7.

Finally, the allegation that BDG received notice through third-party complaints is also insufficient as a matter of law. This Court rejected a similar allegation in *Kinman* because a plaintiff must give a defendant notice "of the trouble with the *particular product* purchased by a *particular buyer*," and the plaintiff's "allegation that defendant should have known about problems due to 'complaints by regulators, competitors and consumers' is merely an allegation of general knowledge of a problem with the product line" which "does not suffice." 2022 WL 1720589, at *3-4 (quotation marks and citations omitted).

### C. BDG Did Not Make Any Affirmation Regarding the Almonds.

Plaintiff's breach of express warranty claim also fails because BDG did not make a false affirmation of fact. A plaintiff must allege that a seller: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020). Generally, "a plaintiff must state the terms of the warranty or attach it to the complaint." *Gubala v. CVS Pharm., Inc.*, 2015 WL 3777627, at *7 (N.D. Ill. June 16, 2015) (internal quotation marks and citation omitted).

In *Kinman*, this Court dismissed an express warranty claim based on a product's "smoked gouda" label statement. 2022 WL 1720589, at *7 n.3. The Court reasoned that the plaintiff "does

not (and cannot) allege the label promised the sliced cheese had been smoked over hardwood" because "the word smoked has more than one meaning, so its inclusion cannot be a promise that the cheese was smoked over hardwood when it can as easily mean the cheese has merely a smoked flavor." *Id.*

So too here. Plaintiff argues that BDG promised that the Almonds were prepared in a smokehouse. (Compl. ¶ 116.) The "Smokehouse" brand name does not expressly make this promise. Accordingly, the breach of express warranty claim must be dismissed.

### D. The Almonds Were Fit for Human Consumption.

Plaintiff's implied warranty claim must also be dismissed because the Almonds were fit for human consumption. "A product breaches the implied warranty of merchantability if it is not fit for the ordinary purposes for which such goods are used." *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 727 (N.D. Ill. 2006) (quoting *Pearson v. DaimlerChrysler Corp.*, 349 Ill. App. 3d 688, 698 (2004) (citing 810 Ill. Comp. Stat. Ann. 5/2-314(c)(2) (internal quotation marks omitted)). In the context of consumable products, a product is not fit for its ordinary purpose if it is unfit for human consumption. *Kinman*, 2022 WL 1720589, at *7 n.3.

In *Kinman*, for instance, this Court dismissed "a claim for breach of the implied warranty of merchantability, because plaintiff d[id] not allege the cheese was unfit for consumption." *Id.* Although Plaintiff alleges in an entirely conclusory fashion that the Almonds "were not merchantable," she does not allege that the Almonds made her sick or could not be consumed. (*See* Compl. ¶ 129.) Therefore, the claim fails.

### E. The Fitness for a Purpose Claim Fails for Several Additional Reasons.

Plaintiff's claim for breach of implied warranty of fitness for a particular purpose fails for several additional reasons. To assert such a claim, a plaintiff must allege that (1) the seller had reason to know of the particular purpose for which the buyer required the goods; (2) the buyer

21

relied on the seller's skill and judgment to select suitable goods; and (3) the seller knew of the buyer's reliance on its skill and judgment." *Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 891 (N.D. Ill. 2014) (quoting *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007)). None of these requirements have been alleged here.

First, "[n]o warranty for a particular purpose is created if the intended use is no different from the ordinary use." *CHS Acquisition Corp. v. Watson Coatings, Inc.*, 2018 WL 3970137, at *6 (N.D. Ill. Aug. 20, 2018) (internal citation and quotation marks omitted); *see also Indus. Hard Chrome Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 746 (N.D. Ill. 1999) ("[T]he goods must be for a purpose other than their ordinary use."); *McDonald's French Fries Litig.*, 503 F. Supp. 2d at 957 (dismissing claim because "plaintiffs do not allege that the consumption of the potato products is not the ordinary use of such products or that defendant had reason to know what the particular, non-ordinary use of the product would be"); *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 805 (N.D. Ill. 2016) (dismissing claim because plaintiff "failed to allege a particular purpose that differs from the ordinary purpose").

So too here. Plaintiff fails to allege that she purchased the Almonds for a something other than consumption. Quite the opposite, the Complaint is predicated on the plaintiff's desire to consume the Almonds. And, although the plaintiff alleges that "she expected [the Almonds] w[ere] made in a smokehouse instead of having added liquid smoke flavor," that is a subjective expectation—not a use. (Compl. ¶ 130.)

Second, Plaintiff fails to allege that BDG knew what her non-existent particular use was *before* she purchased the Almonds. While the Complaint conclusorily alleges that "Defendant had reason to know the particular purpose" (Compl. ¶ 130), that allegation is contradicted by her own complaint because Plaintiff admits that she purchased the Almonds through a third-party and thus

22

had no pre-contractual communication with BDG. (*See* Compl. ¶ 88.) Therefore, BDG could not have known what the particular purpose was. *See Veath Fish Farm, LLC v. Purina Animal Nutrition, LLC*, 2017 WL 4472784, at *8 (S.D. Ill. Oct. 6, 2017) (dismissing claim; "there is no allegation that Plaintiff specifically approached the manufacturers to ensure that the product would do something above and beyond its normal advertised function"); *McDonald's French Fries Litig.*, 503 F. Supp. 2d at 957 ( "plaintiffs do not allege that the consumption … is not the ordinary use … or that defendant had reason to know what the particular, non-ordinary use … would be").

For the same reasons, Plaintiff has also not plausibly alleged that she relied on the "seller's skill and judgment to select suitable goods" or that BDG was aware of such reliance. *See CHS Acquisition Corp.*, 2018 WL 3970137, at *6. Plaintiff's bare and conclusory assertion that "she relied on Defendant's skill and judgment to select or furnish such a suitable product" is wholly insufficient to state a claim. (Compl. ¶ 130.)

For these reasons, the breach of implied warranty of fitness for a particular purpose claim must be dismissed.

## VI.  THE MMWA CLAIM FAILS.

Plaintiff's MMWA claim fails for two distinct reasons. First, "[t]he ability to sustain a cause of action under the [MMWA] is dependent on the existence of an underlying viable state-law warranty claim." *See Schiesser v. Ford Motor Co.*, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016). The MMWA also "incorporates state-law notice requirements." *Kinman*, 2022 WL 1720589, at *4. As set forth above, Plaintiff has neither alleged a viable state law claim for breach of warranty nor fulfilled the Illinois notice requirement. (*See* Section V, *supra*.)

Second, Plaintiff's MMWA claim fails because BDG did not provide a written warranty that the Almonds' "material or workmanship [would be] defect free." *See* 15 U.S.C. § 2301(6)(A). Courts routinely hold that a product description is not a written warranty. *See, e.g.*, *Rudy*, 2022

WL 345081, at *8 (dismissing claim because "[t]he phrase 'Smoked Almonds' is a product description that does not warrant to consumers that the Product is defect-free or will perform at a specified level over a specific time."); *In re Sears, Roebuck & Co.*, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006) ("Made in USA" is not a "written warranty").

The same is true here. BDG did not promise that the Almonds "[were] defect free or w[ould] meet a specified level of performance." Instead, the plaintiff's claims are premised on a product description of the Almonds as "Smokehouse" flavored, which is not a written warranty.

## VII. THE UNJUST ENRICHMENT CLAIM FAILS.

Plaintiff's unjust enrichment claim must be dismissed for two distinct reasons. "Unjust enrichment is a 'quasi-contract' theory that permits courts to imply the existence of a contract where none exists in order to prevent unjust results." *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 622 (N.D. Ill. 2008). A "plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (internal quotation marks and citation omitted).

First, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim" and will "stand or fall with the related claim." *Cleary*, 656 F.3d at 517 (citation omitted). Here, because Plaintiff's unjust enrichment allegations derive from the same set of operative facts as her other claims—the alleged misrepresentation made on the Almonds' label (*see* Compl. ¶ 143)—the unjust enrichment claim is duplicative. *See, e.g.*, *Spector*, 178 F. Supp. 3d at 674 (dismissing claim as duplicative of fraud claim); *Cerretti*, 2022 WL 1062793, at *7 ("Because [plaintiff's] other claims have all been dismissed, her request for relief based on unjust enrichment fails as well.").

In addition, the unjust enrichment claim fails because Plaintiff has not alleged that BDG unjustly retained any benefit from her. She purchased Almonds that were fit for human consumption and presumably consumed them without incident. *See Lend Lease (US) Constr., Inc. v. Tech. Ins. Co., Inc.*, 2016 WL 147895, at *4 (N.D. Ill. Jan. 13, 2016) (dismissing unjust enrichment claim because plaintiff "fail[ed] to indicate that [defendant] received any benefit from [plaintiff] or that [defendant] unjustly retained any benefit at [plaintiff's] expense"). Accordingly, her unjust enrichment claim must be dismissed.

## CONCLUSION

BDG respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety and with prejudice.

Dated: September 16, 2022          **DLA Piper LLP (US)**

    */s/ Yan Grinblat*
Yan Grinblat
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
T: (312) 368-4000
E: yan.grinblat@us.dlapiper.com

Colleen Carey Gulliver*
Rachael C. Kessler*
Jason E. Kornmehl*
1251 Avenue of the Americas
New York, NY 10020-1104
T: (212) 335-4500
E: colleen.gulliver@us.dlapiper.com
E: rachael.kessler@us.dlapiper.com
E: jason.kornmehl@us.dlapiper.com

* Application forthcoming for admission *pro hac vice*

*Counsel for Defendant Blue Diamond Growers*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 16, 2022, I electronically filed the foregoing document using the ECF System for the United States District Court for the Northern District of Illinois. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

*/s/ Yan Grinblat*
Yan Grinblat
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
T: (312) 368-4000
E: yan.grinblat@us.dlapiper.com