IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARGO CLARK, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>BLUE DIAMOND GROWERS,<br><br>   Defendants. | No. 22-cv-1591<br><br>Judge Jorge L. Alonso |

## Memorandum Opinion and Order

Plaintiff Margo Clark filed this lawsuit alleging that Defendant Blue Diamond Grower's "Smokehouse Almonds" product misleads consumers into believing that its almonds are flavored through a smokehouse process instead of through added liquid smoke flavoring. Defendant moves to dismiss Clark's claims based on a lack of standing and for failure to state a claim. For the reasons that follow, the Court grants in part and denies in part Defendant's motion [16].

## Background

The Court takes the following facts from the complaint, which are accepted as true for motion to dismiss purposes. *See Lax v. Mayorkas*, 20 F. 4th 1178, 1181 (7th Cir. 2021). Defendant is a California cooperative of almond growers that sells almond-based products, including a line of almonds made in a variety of flavors. One such flavor is "Smokehouse Almonds," which is intended to have a smokey flavor. This product is sold in various sizes and its packaging features the label "Smokehouse®", among other words, as well as red and orange coloring. A copy of the packaging (as it appears in the complaint) is reproduced below:



(Compl. ¶ 1, ECF No. 1.)

Clark alleges that she bought this product at a CVS store located in Chicago, Illinois on one or more occasions between March 15, 2022 and March 21, 2022. She contends that, despite being labeled "Smokehouse®", the almonds in this product are not flavored by smoking the almonds in an actual smokehouse. Rather, the almonds attain their smokey flavor through a liquid flavoring. (Compl. ¶¶ 41-42, ECF No. 1.)

Clark claims that by labeling the product in this manner, Blue Diamond misled consumers into believing they were purchasing a product flavored in a smokehouse rather than through added liquid smoke flavoring. She further alleges that Blue Diamond sold more of this product at higher prices (*i.e.*, a premium) than it would have in the absence of the smokehouse labeling. Clark, therefore, brings claims for violation of: (1) the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/1; (2) breach of express warranty; (3)

negligent misrepresentation; (4) fraud; and (5) unjust enrichment. In addition, she originally brought claims for breach of implied warranty of merchantability/fitness for a particular purpose and under the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, but has withdrawn those claims. (Pl. Resp. 9 n.1, ECF No. 27.) Clark also seeks to represent a class of consumers from 12 states, including Illinois, and injunctive relief against Blue Diamond.

## Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

When considering a motion to dismiss, courts "accept the allegations in the complaint as true, and . . . draw all reasonable inferences in favor of the plaintiff." *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021) (citation omitted). But "allegations in the form of legal conclusions are insufficient" to survive a motion to dismiss, as are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Defender Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015) (citations and internal quotation marks omitted).

## Discussion

Defendant argues that the Court should dismiss Clark's claims because she lacks standing to pursue them and, alternatively, because she fails to plead causes of action with respect to each theory of relief. Because Defendant's standing argument presents a threshold issue, the Court addresses it first.

### I. Article III Standing

Blue Diamond begins by arguing that Clark lacks Article III standing to pursue her claims because she has not alleged an injury and has not traced any alleged injury to its conduct. In order to establish Article III standing, a plaintiff must show the following: she has suffered an injury-in-fact that is both (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; the injury is fairly traceable to the defendant's challenged action; and it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). A "concrete" injury must be "de facto"; that is, it must actually exist. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-49 (2016). Furthermore, a plaintiff must allege facts supporting standing for each form of relief sought. *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008).

Here, Clark plausibly alleges facts showing standing to pursue damages but not injunctive relief. The Supreme Court states that an economic injury may support standing. *See Sierra Club v. Morton*, 405 U.S. 727, 733 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing."). "Under the benefit-of-the-bargain theory, the economic injury is calculated as the difference in value between what was bargained for and

what was received." 15 James Wm. Moore et al., Moore's Federal Practice § 101.40[5][c] (3d ed. 2019).

Clark's allegation of an economic injury is sufficient to support standing. She alleges that she didn't get what she paid for—namely, that she did not get almonds flavored in an actual smokehouse—which suffices to demonstrate an injury. *See Sierra Club*, 405 U.S. at 733; *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014); *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748, 751 (7th Cir. 2011).

Blue Diamond argues that no price premium exists because it sells all its flavored almonds for the same price and points to the decision in *Colpitts v. Blue Diamond*, Case No. 20-cv-2487, 2023 WL 2752161 (S.D.N.Y March 31, 2022), as well as affidavits from various company executives. But that particular *Colpitts* decision is unhelpful here. First, that order was issued at the summary judgment stage. *Id.* at *2. And second, *Colpitts* held that the plaintiff could not marshal enough evidence to prove an injury, one of the essential elements under New York's consumer protection statute. *Id.* at *4-5. To be sure, Clark may run into the same problem that the *Colpitts* plaintiff did, but that is a matter for summary judgment, not a motion to dismiss.

Moreover, the Court declines to consider Blue Diamond's affidavits—which seek to introduce evidence and facts beyond the complaint's four corners. *See Neita v. City of Chicago*, Case No. 19-cv-595, 2019 WL 5682838, at *2 (N.D. Ill. Nov. 1, 2019) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("In general, courts may only consider the allegations within the four corners of a complaint when deciding a Rule 12(b)(6) motion").

Clark fails, however, to demonstrate standing to pursue injunctive relief. "Past exposure to illegal conduct does not in itself [provide standing to seek] injunctive relief…if

unaccompanied by any continuing, present adverse effects," *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974), or by "a sufficient likelihood that [plaintiff] will again be wronged in a similar way," *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Indeed, most courts to address similar issues agree that consumer plaintiffs cannot pursue injunctive relief if they are already aware of the alleged deceptive practice. *See In re Herbal Supplements Mktg. & Sales Practices Litig.*, No. 15-cv-5070, 2017 WL 2215025, at *7 (N.D. Ill. May 19, 2017) (citing 1 McLaughlin on Class Actions § 4.28 (13th ed. 2016) ("[M]ost courts…have ruled that a plaintiff who is a former customer who provides no concrete basis to conclude that he or she will purchase the product at issue in the future…lacks standing to pursue injunctive relief on behalf of a consumer class because the plaintiff is unlikely to suffer future harm.")); *Mednick v. Precor, Inc.*, Case No. 14-cv-3624, 2016 WL 5390955, at *9 (N.D. Ill. Sept. 27, 2016); *Bohn v. Boiron*, Case No. 11-cv-2704, 2013 WL 3975126, at *4 (N.D. Ill. Aug. 1, 2016).

This Court follows *In re Herbal Supplements* and *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014), which reason that a plaintiff who only alleges a past harm caused by a deceptive sales practice faces no "real and immediate threat" such that she will be deceived by the same practice after the deception is revealed, and therefore is not entitled to pursue injunctive relief. *See also Ulrich v. Probalance, Inc.*, No. 16-cv10488, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017) (citing *Lyons*, 461 U.S. at 102). But Clark does not allege that she continues to purchase Defendant's Smokehouse Almonds product. To the contrary, she confirms that she does not purchase these products anymore. (Compl. ¶ 95, ECF No. 1.) ("Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition"). Thus, she faces no real and immediate threat anymore.

6

Although she may wish to continue buying almonds that are smoked in a smokehouse, the Court agrees with Defendant that this allegation is simply too hypothetical to confer standing to pursue injunctive relief. *See Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) ("To have standing for prospective injunctive relief, a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical'") (citing *Lyons*, 461 U.S. at 102). For these reasons, the Court finds that Clark has standing to pursue her consumer protection claims but dismisses her request for injunctive relief.

## II.     Illinois Consumer Fraud and Deceptive Practices Claim

Clark's ICFA claim alleges a deceptive practice as opposed to an unfair act. Hence, she must allege: (1) a deceptive act or practice by Blue Diamond, (2) that the deceptive act or practice occurred in the course of conduct involving trade or commerce, (3) that Blue Diamond intended that she rely on the deception, and (4) that the deception caused her actual damages. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Although ICFA claims often involve disputed questions of fact not suitable to a motion to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a matter of law. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001) (affirming dismissal of a complaint involving Zantac 75).

Here, the parties' dispute effectively boils down to whether the "Smokehouse®" label is misleading and, thus, a deceptive practice. Blue Diamond argues that the label is not misleading and that no reasonable consumer could interpret it to mean that the almonds were smoked in an actual smokehouse. In addition, it argues that the label's full context, including the ingredients panel on the packaging's backside, confirms that the product is not flavored in a smokehouse and that a reasonable consumer would not be deceived into thinking otherwise. Conversely, Clark

7

argues that the label is ambiguous and that a reasonable consumer viewing it could be misled into thinking that the almonds were flavored in a smokehouse.

"[A] practice is deceptive 'if it creates a likelihood of deception or has the capacity to deceive.'" *Benson v. Fannie May Confections Brand, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quoting *Bober*, 246 F.3d at 938). "To determine the likelihood of deception, courts apply a 'reasonable consumer' standard." *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 704-05 (N.D. Ill. 2020) (citing *Benson*, 944 F.3d at 646). The reasonable consumer standard "requires more than a mere possibility that [a] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public…acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (internal citations and quotation marks omitted).

Courts considering "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020). "What matters most is how real consumers understand and react to the advertising." *Id.* "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Id.* at 477.

The parties identify two district court decisions from other districts that are squarely on point but reach different conclusions. The first is *Colpitts v. Blue Diamond*, in which a district court in the Southern District of New York held that it is plausible that a reasonable consumer could be misled by Blue Diamond's label into believing that its almonds were manufactured through an actual smoking process. 527 F. Supp. 3d at 581. That court noted, like Clark does

8

here, that the word "'smokehouse' describes a physical structure where food is prepared through the process of using actual smoke." *Id.* (citing Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/smokehouse). Because of that, the court distinguished the use of the word "smokehouse" from other cases where words like "vanilla" were used and commonly understood to denote a flavor. *Id.* at 582.

The second case is *Cummings v. Growers*, Case No. 22-cv-141, 2023 WL 3487005 (N.D. Fla. May 15, 2023). In that case, the district court held that Blue Diamond's "Smokehouse®" label was not misleading and, therefore, the plaintiff could not maintain an action under Florida's consumer protection statute (virtually identical to Illinois's). *Id.* at *3-4. The court held that an objective consumer would not interpret the smokehouse label to indicate that the product was actually produced in a smokehouse. *Id.* Additionally, the Court found that the trademark symbol and ingredients list further signaled that "Smokehouse" was a brand name and not a promise of the method of manufacture. *Id.*

In this case, the Court agrees with the district court in *Colpitts*. The Court does not view Clark's interpretation of the word "smokehouse" to be unreasonable or fanciful. Indeed, between the label and associated imagery, Blue Diamond clearly seeks to evoke a connection between its product and a smokehouse. Although Blue Diamond may intend for the term "smokehouse" to describe a flavor, it can also be used to describe a process. *See Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1159 (N.D. Ill. 2022) (noting that the word "smoked" described a process and therefore could be misleading). And unlike those cases holding that the alleged phrase described a common flavor, smokehouse is not a term like "vanilla" or "strawberry" frequently used to describe a flavor. *Cf. Zahora v. Orgain LLC*, 2021 WL 5140504, at *5 (N.D. Ill. Nov. 4, 2021) (discussing "vanilla" cases); *Chiappetta v. Kellogg Sales Co.*, Case No. 21-cv-

9

3545, 2022 WL 60205, at **4-5 (N.D. Ill. March 1, 2022) (finding that "strawberry" Pop-Tart was not misleading).

The phrase "smokehouse," on the other hand, describes a physical structure. And with respect to almonds in particular, it appears that flavoring almonds through the use of a smokehouse is a well-known process. (*See* Compl. ¶¶ 21-27.) Of course, Blue Diamond is free to develop and present evidence that a reasonable consumer would not make this connection between the word "smokehouse" and the manufacturing process. But at this stage, it is plausible that an objective consumer could be misled by Blue Diamond's labeling.

Moreover, with respect to Blue Diamond's ingredients list argument, the Seventh Circuit rejects an ambiguity rule immunizing defendants from suit for ambiguous front labels based on the contents of back-label ingredients. *See Bell*, 982 F.3d at 476. It points out that the 12(b)(6) standard does not attribute "to ordinary supermarket shoppers a mode of interpretation more familiar to judges trying to interpret statutes in the quiet of their chambers." *Id.* In sum, Clark sufficiently pleads a deceptive practice claim.

### III. Other State Consumer Protection Claims

The parties dispute whether Clark can maintain a claim for violation of other states' consumer protection statutes as a proposed class representative. Blue Diamond argues she cannot because she was not harmed under the laws of those states; rather, she was only allegedly harmed in Illinois. Clark argues that this issue is best reserved to the class certification stage.

Courts in this district take different approaches to this issue. Some view it as related to standing. *See Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 998-1002 (N.D. Ill. 2017) (collecting cases and tracing different approaches). Others view it as one of substantive law: can a named plaintiff assert a legal theory, unavailable to him individually, on behalf of a multi-state

class. *Id.* at 1000-01. Put differently, these courts frame the issue in terms of whether the named plaintiff can meet the class-certification prerequisites imposed by Rule 23. Courts also disagree about whether, prior to class certification, there must be at least one named plaintiff with standing—referred to as "statutory standing," *see, e.g.*, *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009)—to recover under a particular legal theory in a class-action complaint. *See Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 731-35 (N.D. Ill. 2015) (collecting cases).

The prevailing view, particularly recently, is that the issue is best framed through the class-certification lens, not standing. *See Wyant v. Dude Products, Inc.*, Case No. 21-cv-0682, 2022 WL 621815, at *3 (N.D. Ill. March 3, 2022); *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 859-62 (N.D. Ill. March 23, 2021); *Texas Hill Country Landscaping, Inc., v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 408-09 (N.D. Ill. March 1, 2021); *Benson v. Newell Brands, Inc.*, Case No. 19-cv-6836, 2020 WL 1863296, at *4 (N.D. Ill. April 14, 2020); *Muir v. Nature's Bounty (DE), Inc.*, Case No. 15-cv-9835, 2018 WL 3647115, at *7-8 (N.D. Ill. Aug. 1, 2018); *Rawson v. Aldi, Inc.*, Case No. 21-cv-2811, 2022 WL 1556395, at *5-6 (N.D. Ill. May 17, 2022). The Seventh Circuit holds that "the question of who is authorized to bring an action under a statute is one of statutory interpretation; it does not implicate Article III or jurisdiction." *Woodman's Food Market, Inc. v. Clorox Co.*, 833 F.3d 743, 750 (7th Cir. 2016); *see also Morrison v. YTB Intern, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ("That a plaintiff's claim under his preferred legal theory fails has nothing to do with subject matter jurisdiction unless the claim is so feeble as to be 'essentially fictitious.") (citation omitted).

The cases applying the prevailing view generally agree that standing only requires that the plaintiff allege a concrete and particularized injury based on the defendant's conduct, which,

11

in cases like this one, is usually met for the named-plaintiff in consumer protection class-action cases. *See Liston*, 254 F. Supp. 3d at 1000. But whether a plaintiff must have a valid claim under every legal theory he seeks to assert on behalf of a class goes to the propriety of class certification. *See Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015).

The Court adopts the prevailing viewpoint. The Court, however, acknowledges that it "would also be inappropriate to engage in wide-ranging discovery premised on a prospect as to which there is substantial doubt—namely, [the plaintiff's] ability to assert causes of action created by other states for the benefit of other individuals injured in those other states." *Liston*, 254 F. Supp. 3d at 1001. Furthermore, the Court recognizes that asserting a class action under consumer-protection statutes of multiple states may not be manageable. *See Morrison*, 649 F.3d at 536. Accordingly, the Court anticipates that it will stay discovery on Clark's consumer protection claims outside of Illinois until it rules on class certification or until some other ground provides reasonable assurance that there will be a valid basis for discovery on these claims, as other courts have done. *See Liston*, 254 F. Supp. 3d at 1001; *Wyant*, 2022 WL 621815 at *3. The motion to strike Clark's class allegations is denied.

## IV. Plaintiff's Common Law Claims

### A. Express Warranty

To state a claim for breach of express warranty under Illinois law, a plaintiff must allege that a seller: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020). Generally, "a plaintiff must state the terms of the warranty alleged to be breached or

attach it to the complaint." *Gubala v. CVS Pharmacy, Inc.*, Case No. 14-cv-9039, 2015 WL 3777627, at *7 (N.D. Ill. June 16, 2015) (internal quotation marks and citation omitted).

Buyers seeking to sue for breach of express warranty must first notify the seller of its breach. *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015). A party's failure to comply with the notice requirement may be excused if they allege that they suffered a physical injury or that the defendant had actual knowledge of the product's defect. *Id.* at 760. But this failure will not be excused if a plaintiff has suffered economic damages only. *See Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 494-95, 221 Ill. Dec. 389, 675 N.E.2d 584, 590-91 (Ill. 1996).

In Blue Diamond's view, Clark's claim for breach of express warranty fails because she has not adequately pled the pre-suit notice required for such claims. (Def. Mem. 19-20, ECF No. 17.) Blue Diamond also argues that Clark's claim fails for a lack of privity. (Def. Mem. 25-26, ECF No. 17.) Clark responds that she met the pre-suit notice requirement because she notified Blue Diamond of the breach through filing this suit. (Pl. Mem. 12, ECF No. 27.)

The Court need not reach Blue Diamond's privity argument, because it agrees that pre-suit notice is lacking. The notice requirement is intended to "encourage pre-suit settlement negotiations." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007). That purpose would be eviscerated if a party could satisfy the notice requirement by filing suit, as Clark contends.

The case cited by Clark, *In re Bridgestone/Firestone, Inc. Tires Products*, 155 F. Supp. 2d 1069 (S.D. Ind. 2001), does not persuade the Court to reach a different result. In that case, the Southern District of Indiana applied the laws of Tennessee and Michigan, not Illinois law, to plaintiffs' breach of warranty claims. *Id.* at 1084. In fact, in finding that the filing of suit could satisfy the notice requirement, the court observed that it was reaching a different result than the

13

Illinois Supreme Court, which had held that the notice requirement could not be met by filing suit, except in circumstances not present here. *Id.* at 1110 (observing that the Illinois Supreme Court held in *Connick*, 174 Ill. 2d at 494-95, 221 Ill. Dec. 389, 675 N.E.2d at 590, that "under Illinois law only a consumer buyer who suffered a personal injury may satisfy [the notice requirements set forth in the Uniform Commercial Code] by filing suit").

Nor does Clark assert that she qualifies for an exception to the pre-suit notice requirement. Because Clark acknowledges that she did not notify Blue Diamond of the alleged breach before filing this lawsuit and has not offered a valid excuse for that failure, the Court dismisses her claims for beach of express warranty.

### B. Negligent Misrepresentation

A negligent misrepresentation claim requires the plaintiff to plead and prove: "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining truth of the statement; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 332 (Ill. 2006).

Among other things, Blue Diamond argues that the economic loss rule bars Clark's negligent misrepresentation claim. The Illinois Supreme Court first set out the economic loss doctrine—also known as the "Moorman doctrine"—in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 88, 61 Ill. Dec. 746, 435 N.E.2d 443, 451–52 (Ill. 1982). It "'denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations.'" *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1120 (N.D. Ill. 2019)

(quoting *Sienna Ct. Condo. Assoc. v. Champion Aluminum Corp.*, 2018 IL 122022, ¶ 21, 432 Ill. Dec. 569, 129 N.E.3d 1112, 1119 (2018)).

Although apparently conceding that the economic loss doctrine applies, Clark argues that her claim satisfies an exception to the rule. She contends that a plaintiff who suffers purely economic losses may maintain a claim for negligent misrepresentation against "one who is in the business of supplying information for the guidance of others in their business transactions." *See Moorman*, 91 Ill. 2d at 89, 61 Ill. Dec. 746, 435 N.E.2d at 452. According to Clark, Blue Diamond had a special "duty to truthfully represent the Product [] based on its position, holding itself out as having special knowledge and experience in this area, as the leading name in almonds.'" (Pl. Mem. 22, ECF No. 27).)

The Court agrees with Blue Diamond. Other courts in this district have repeatedly rejected this same argument offered by Clark. *See Rudy*, 583 F. Supp. at 1164; *Manley*, 417 F. Supp. 3d at 1120. Suppliers of tangible goods do not become "one who is in the business of supplying information for the guidance of others in their business transactions" by virtue of providing "information ancillary to the sale of a product" only. *Manley*, 417 F. Supp. at 1120 (internal quotation marks and citations omitted).

Clark's cited case in support of her position—*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 162, 201 Ill. Dec. 71, 636 N.E.2d 503, 514 (Ill. 1994)—is inapposite. That case concerned services offered by skilled professional accountants. *Id.* at 161. But Blue Diamond was not in the business of providing information in the manner intended by the exception to the economic loss doctrine. *See Manley*, 417 F. Supp. 3d at 1120-21; *Rudy*, 583 F. Supp. at 1165; *First Midwest Bank*, 218 Ill. 2d at 339, 300 Ill. Dec. 69, 843 N.E.2d at 334–35. Clark's negligent misrepresentation claim, therefore, is dismissed.

### C. Fraud

To state a claim for common-law fraud, a plaintiff must plead: "'(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.'" *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick*, 174 Ill. 2d. at 496, 221 Ill. Dec. 389, 675 N.E.2d at 591). "Scienter, knowledge by the defendant that a statement he has made is false, is an essential element of common-law fraud." *Ollivier v. Alden*, 262 Ill. App. 3d 190, 198, 199 Ill. Dec. 579, 634 N.E.2d 418, 424 (2d Dist. 1994); *see also Tricontinental Indus.*, 475 F.3d at 841-42 (plaintiff's claim for common-law fraud was properly dismissed where plaintiff did not adequately plead scienter).

Blue Diamond asserts that Clark's claim fails because she does not plead fraudulent intent. Clark responds that she satisfies the pleading requirements set forth in Federal Rule of Civil Procedure 9(b) because she alleges the fraud's "who, what, where, when, and how."

The Court again agrees with Blue Diamond. Clark's scienter allegations parallel those found insufficient by courts within this district as well as courts outside this district. *See Rudy*, 583 F. Supp. at 1165-66; *Cummings*, 2023 WL 3487005; *Colpitts*, 527 F. Supp. 3d at 571-72, 585. In other words, the Court finds that Clark's allegations are conclusory. Accordingly, her fraud claim is dismissed.

### D. Unjust Enrichment

"Unjust enrichment is a 'quasi-contract' theory that permits courts to imply the existence of a contract where none exists in order to prevent unjust results." *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 622 (N.D. Ill. 2008). To state a claim for unjust

16

enrichment under Illinois law, a "plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (internal quotation marks and citation omitted); *see also Prudential Ins.*, 548 F. Supp. 2d at 622. But if the parties' relationship is governed by a contract, a plaintiff cannot bring a claim of unjust enrichment unless the claim falls outside of that contract. *Prudential Ins.*, 548 F. Supp. 2d at 622.

Clark alleges that Blue Diamond was unjustly enriched when it "obtained benefits and monies because the Product was not [] represented [as] expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." (Compl. ¶ 143, ECF No. 1.) Blue Diamond insists that Clark's unjust enrichment claim should be dismissed because it is duplicative of other claims and because Clark has not alleged that Blue Diamond retained any benefit from her since she purchased almonds that were fit for human consumption. In response, Clark claims that it would be premature to dismiss her unjust enrichment claim because Federal Rule of Civil Procedure 8(d)(2) allows parties to plead alternative claims.

Clark is correct that she may plead her unjust enrichment claim in the alternative. "Under federal pleading standards, a plaintiff may plead claims in the alternative, even if the claims are contradictory." *Prudential Ins.*, 548 F. Supp. 2d at 623. Accordingly, the Court declines to dismiss her unjust enrichment claim at this time.

## Conclusion

The Court grants in part and denies in part Defendant's motion to dismiss [16]. Defendant's answer is due by July 7, 2023. A telephonic status hearing is set for July 19, 2023, at

9:30 am. The parties are directed to file a joint status report in accordance with the Court's standing order by July 17, 2023.

**SO ORDERED.**                                   **ENTERED: July 5, 2023**

_____
**HON. JORGE ALONSO**
**United States District Judge**